**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| JOHN WILSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, JOHN DOE I, II, III, JANE DOE I, II, III, and XYZ CORP. I, II, III,<br><br>Defendants. | CIVIL ACTION NO.: ______________ |

# COMPLAINT

**COMES NOW** Plaintiff John "Billy" Wilson herein after referred to as "Plaintiff" and brings a claim for personal injury against the United States of American and John Doe I, II, III, Jane Doe I, II, III, and XYZ Corp. I, II, III, and shows the Court as follows:

## PARTIES

1.

Plaintiff is a resident of Rossville, Georgia and is authorized to bring suit on his own behalf.

2.

Defendant is the United States of America and is subject to the jurisdiction and venue of this Court under Federal Tort Claims Act. Service is governed by Federal Rule 4(i)(1). Plaintiff served the United States by delivering a copy of the Complaint and Summons via certified mail and personal service to the United States attorney for the Northern District, Rome Division. Plaintiff also provided service via Rule 4(i) to the Attorney General's Office in Washington, D.C.

3.

The agents and employees of Primary Healthcare Center in Rossville, Georgia at all times relevant to this Complaint were employees and/or agents of a federally funded medical clinic.

4.

Defendants John Doe I, II, III and Jane Doe I, II, III are residents or non-residents of the State of Georgia and may be served by delivering a Summons and a copy of the Complaint as provided by law.

5.

Defendants XYZ Corp. I, II, III are domestic or foreign corporations and may be served by delivering a Summons and a copy of the Complaint as provided by law.

6.

Venue and jurisdiction are proper as to all named Defendants in this Court.

**COMPLIANCE WITH 28 U.S.C. § 2401**

7.

Plaintiff complied with 28 U.S.C. § 2401 by presenting his claim to the Department of Health & Human Services, Office of the General Counsel General Law Division, Claims and Employment Law Branch at 330 C. Street SW, Switzer Building, Suite 2600, Washington D.C. 20201 on October 11, 2017. A copy of Plaintiff's claim form is attached hereto as Exhibit "A."

8.

Plaintiff allowed six (6) months to pass from the time he presented his claim before filing suit in accordance with the Federal Tort Claims Act.

**COMPLIANCE WITH O.C.G.A. § 9-11-9.1**

9.

Contemporaneously with the filing of this Complaint and Demand for Trial by Jury, and in full compliance with the requirements of O.C.G.A. § 9-11-9.1, Plaintiff files the Affidavit of Jeff Roth, M.D., an expert witness qualified to testify as to the standard of care required of the physicians and staff agents and employees of Primary Healthcare Centers in circumstances the same as or similar to the

circumstances surrounding the care and treatment of Plaintiff. The Affidavit sets forth at least one negligent act or omission and the factual basis for each such claim. Dr. Roth's Affidavit is attached hereto as Exhibit "B."

## FACTS GIVING RISE TO THE ACTION

10.

Primary Healthcare Centers in Rossville, Georgia was a federally funded medical clinic providing medical care to area residents at all relevant times hereto. All of the medical providers who rendered care to Plaintiff at Primary Healthcare Centers were agents or employees of the United States.

11.

Plaintiff received medical care as a patient of Primary Healthcare Centers for several years leading up to 2016 and throughout 2016.

12.

In 2016, Plaintiff had the following conditions and diagnosis that were known to the staff and medical providers at Primary Healthcare Centers:

a) Hypertension;

b) Chronic kidney disease;

c) Chronic systolic heart failure;

d) Chronic atrial fibrillation;

e) Malignant neoplasm of kidney;

f) Type II diabetes without complications; and

g) Long term (current) use of anticoagulants.

13.

Plaintiff was prescribed blood-thinning medication, Coumadin/Warfarin, to treat heart related illnesses in 2016 by the medical providers at Primary Healthcare Centers. Because of the blood thinning medication was potentially toxic to the body, Plaintiff's Coumadin level required monitoring. Primary Healthcare Centers was required to perform PT/INR tests to monitor Plaitniff's Coumadin level.

14.

The dosage, frequency, and duration for Plaintiff's blood thinner were all managed by the medical providers at Primary Healthcare Centers.

15.

Primary Healthcare Centers owed a duty to properly monitor and adjust Plaintiff's Coumadin level so that a therapeutic range was maintained. This duty to monitor and adjust Plaintiff's medicine necessitated sufficiently frequent PT/INR testing until a therapeutic range of Coumadin was maintained on a consistent basis.

16.

The appropriate INR level was a range between 2.0 and 3.0. Plaintiff's PT results were required to be between 9.1/sec and 12.0/sec. Coumadin levels below the therapeutic range increased the risk of ischemic stroke. Coumadin levels above the therapeutic range increased the risk of hemorrhagic stroke.

17.

Plaintiff had a PT/INR test on April 22, 2016 that showed an INR of 1.3 and PT of 14.1. The next PT/INR test was done a month later in May, 2016 when Plaintiff had an INR of 5.5 and PT of 59.1. The next test after the May, 2016 test was done a month later in June, 2016. The next PT/INR test after the June, 2016 test was done on July 19, 2016.

18.

Plaintiff had an INR of 1.4 on June 16, 2016. The medical staff at Primary Healthcare Centers increased the Coumadin dose amount in June, 2016 to 50.5mg per week with the intent of raising the Coumadin level to a therapeutic range. Plaintiff's level was not tested until July 19, 2016. Plaintiff's INR was 4.2 and Plaintiff' PT was 45.6 on July 19, 2016. These test results indicated a dangerously high level of Coumadin.

19.

Instead of immediately and appropriately adjusting Plaintiff's Coumadin on July 19, 2016, Primary Healthcare Centers waited until July 28, 2016 before it attempted to adjust Plaintiff's Coumadin dose. During this ten (10) day period, Plaintiff continued taking the prescribed dose designed to elevate his Coumadin that was initially ordered in June.

20.

On July 28, 2016, Primary Healthcare Centers adjusted Plaintiff's Coumadin regimen to 50mg per week. This regimen was merely .5mg less than the weekly dose Plaintiff was previously taking.

21.

Plaintiff followed the instruction from Primary Healthcare Centers and continued taking his Coumadin medication as prescribed on July 28, 2016.

22.

On August 4, 2016, Plaintiff experienced an intense headache with nausea. Plaintiff eventually vomited and was later found unconscious by his daughter.

23.

Plaintiff was rushed to Memorial Hospital in Chattanooga, Tennessee where it was discovered that he was suffering from a large subdural hemorrhage.

Plaintiff was transported to Erlanger Hospital where he underwent brain surgery to stop the hemorrhagic bleeding. Plaintiff's blood analysis revealed Coumadin toxicity. His INR was 5.3 and the PT was 47.6.

24.

Plaintiff remained in critical care at Erlanger as he suffered extensive medical complications related to his hemorrhagic stroke.

25.

Plaintiff was discharged to a nursing home with a feeding tube and confined to a bed. Plaintiff was 56 years old.

26.

Between April 22, 2016 and July 19, 2016 Primary Healthcare Centers tested the Coumadin level in Plaintiff's system a mere four times. All four tests were abnormal and required drastic adjustments of Plaintiff's Coumadin dose.

27.

The proximate cause of Plaintiff's hemorrhagic stroke was excessive levels of Coumadin.

28.

Plaintiff suffered extensive hospitalization and nursing home admissions, surgeries, infections, and permanent physical injuries as a result of his stroke on

August 4, 2016. Plaintiff suffered extensive and permanent cognitive loss requiring constant daily care as a direct and proximate result of Defendant's negligence.

29.

As a direct and proximate result of Primary Healthcare Centers' negligence, Plaintiff sustained permanent physical injury, permanent pain and suffering, past medical expenses and future medical expenses, past and future lost wages all of which he is entitled to recover from Defendant.

30.

The medical providers at Primary Healthcare Centers negligently responded to Plaintiff's dangerously high Coumadin level on July 19, 2016 by waiting too long to respond and by insufficiently adjusting the medication to safely and quickly bring the Coumadin levels down in Plaintiff's system. As a direct and proximate result of these negligent acts, Plaintiff suffered a hemorrhagic stroke from Coumadin toxicity.

31.

At all relevant times, the physicians, physician assistants, nurses, techs, and medical assistants at Primary Healthcare Centers were acting within the course and scope of their employment at Primary Healthcare Centers. At all relevant

times hereto, Primary Healthcare Centers was a federally funded medical clinic. Primary Healthcare Centers and the United States of America are liable for the acts and omissions of its employees and agents under the doctrine of *respondeat superior*.

32.

As required under the Federal Tort Claims Act, Plaintiff brings suit against the United States of America for the actions of the employees and agents of Primary Healthcare Centers; a federally funded medical clinic in Rossville, Georgia.

33.

To the extent Plaintiff discovers that certain medical providers were not employees or agents of the United States of America, Plaintiff identifies John Doe I, II, III, Jane Doe I, II, III, and XYZ Corp. I, II, III as Defendant(s) who are liable for the injuries suffered by Plaintiff as described herein.

**PLAINTIFF'S CLAIMS AGAINST DEFENDANT FOR PROFESSIONAL NEGLIGENCE**

34.

Defendant is liable to Plaintiff on account of its (1) failure to exercise ordinary and professional care, (2) breach of the applicable professional

standards of care, and (3) otherwise negligent acts and omissions in the care and treatment of Plaintiff the same to include, but not limited to the following:

a. Failing to follow the standard of care for Coumadin management;

b. Failing to follow the standard of care for sufficient and adequate PT/INR testing;

c. Failing to properly monitor Plaintiff's Coumadin levels to ensure a therapeutic level was maintained while he was a patient of Primary Healthcare Centers; and

d. Failing to properly adjust Plaintiff's Coumadin medication after an abnormal test result on July 19, 2016.

35.

Primary Healthcare Centers did not respond to Plaintiff's dangerously high test results from July 19, 2016 until July 28, 2016. This delay resulted in Plaintiff continuing to take a Coumadin dose amount designed to increase the Coumadin levels in his blood.

36.

Primary Healthcare Centers failed to adequately reduce the Coumadin dose on July 28, 2016 when it adjusted Plaintiff's dose to 50mg/week on July 28, 2016. As a direct result of Defendant's delayed and inadequate response, Plaintiff's

Coumadin level was higher on August 4, 2016 then the level tested on July 19, 2016.

37.

As a direct and proximate result of Defendant's professional negligence, Plaintiff's blood was unable to clot properly which in turn caused a hemorrhagic stroke.

38.

Defendants are liable for the professional actions and inactions of the agents and employees of Primary Healthcare Centers.

39.

All professional negligent acts and omissions, as above-described, operated together and concurrently and substantially contributed to proximately bring about the injuries to Plaintiff.

40.

Defendant is liable to Plaintiff under theories of professional negligence said acts and omissions being expressed above and in the affidavit of Jeff Roth, M.D. attached hereto as Exhibit "B." Dr. Roth's affidavit sets froth his opinion of at least one negligent act that is proximately related to the injuries of Plaintiff and all of his

opinions contained in his affidavit are incorporated and referenced within the Complaint.

**ORDINARY NEGLIGENCE**

41.

Defendant is liable to Plaintiff under the theory of ordinary negligence.

42.

Defendant failed to exercise ordinary care and in its conduction of otherwise negligence acts and omissions in the care and treatment of Plaintiff; the same to include, but not limited to the following:

a. Failing to follow physician instructions when providing the dose, duration and frequency instruction to Plaintiff;
b. Failing to follow safety instructions regarding Coumadin testing;
c. Violating facility protocol for PT/INR testing;
d. Failing to respond to PT/INR test result of July 19, 2016 until July 28, 2016;
e. Incorrectly relaying the dose amount of Coumadin to Plaintiff on July 28, 2016; and
f. Failing to follow up on the PT/INR test of July 19, 2016 so that a timely response to the results could be made.

**DAMAGES**

43.

Defendants are liable for the medical costs (past medical expenses and future medical expenses) associated with the care and treatment for Plaintiff as it relates to the negligent acts and omissions that occurred while Plaintiff was a patient of Primary Healthcare Centers as described above. Plaintiff suffered past medical expenses in excess of $300,000.00. Plaintiff will suffer future medical expenses in amount to be proven at trial, but in excess of $100,000.00.

44.

Defendant is liable for the past, present and future lost wages of Plaintiff as a direct and proximate result of the negligence acts and omissions that occurred while Plaintiff was a patient of Primary Healthcare Centers as described above. Plaintiff suffered past lost wages in excess of $10,000.00 and will continue to suffer such damages in an amount to be proven at trial.

45.

Defendant is liable for the past, present and future pain and suffering of Plaintiff as a direct and proximate result of the negligent acts and omissions that occurred while Plaintiff was a patient of Primary Healthcare Centers as described above.

46.

Defendants are liable for the permanent physical and mental injuries suffered by Plaintiff as a direct and proximate result of the negligent acts and omissions that occurred while Plaintiff was a patient of Primary Healthcare Centers as described above.

**PLAINTIFF'S PRAYER FOR RELIEF AND**

**DEMAND FOR TRIAL BY JURY**

47.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant for all damages recoverable by law in an amount in excess of $100,000.00, to include, but not be limited to:

a. Pain and suffering, to include physical pain and suffering, mental and emotion anguish, pain and suffering, such as anxiety, worry, and loss of enjoyment of life, and all other forms of general damage available at law, both past and future;

b. Past and future medical expenses;

c. Past and future lost wages;

d. Permanent physical injury; and

e. Any and all additional damages available.

Respectfully submitted this 10 day of May, 2018.

**HOWELL & JOHNSON, LLC**

By: ______________________________
MICHAEL W. JOHNSON
Georgia Bar No.: 395058
EVAN H. HOWELL
Georgia Bar No.: 372190
*Attorneys for Plaintiffs*

525 S. MILLEDGE AVENUE, STE. A
ATHENS, GEORGIA 30605
PHONE: 706.548.0028
FAX: 678.731.1593
Email: mjohnson@hojolaw.com